UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                        :

LINDA RAMOS,                 :

                   Plaintiff,   :        20-CV-9436 (OTW)
                        :

     -against-      :        **OPINION & ORDER**
                        :

                        :

COMMISSIONER OF SOCIAL SECURITY,  :

                  Defendant.  :

                        :

-----------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

I.    **Introduction**

On September 25, 2018, Plaintiff Linda Ramos filed an application for Supplemental Security Income benefits ("SSI"), alleging disability beginning September 21, 2017 due to severe anxiety, back pain, and multiple physical, mental, and intellectual impairments. (ECF 17 at R. 509-516) (SSA Administrative Record, hereinafter "R."). On December 27, 2018, Plaintiff's application was denied after an initial review. (R. 448-451). On December 31, 2018, Plaintiff requested a hearing before Administrative Law Judge ("ALJ") Michael J. Stacchini. (R. 452-454). A hearing was held before the ALJ on September 19, 2019. (R. 375-403). Plaintiff attended the hearing *pro se*. (R.375-403). By written decision dated October 17, 2019, the ALJ found that Plaintiff was not disabled under the Social Security Act ("SSA"). (R. 11-30). The ALJ found that Plaintiff had severe impairments of an intellectual disability, obsessive-compulsive disorder ("OCD"), post-traumatic stress disorder ("PTSD"), anxiety disorder, depressive disorder,

1

degenerative disc disease of the lumbar spine with scoliosis, degenerative disc disease of the thoracic spine, asthma, and obesity. (R. 16). The ALJ found that these impairments did not fall under any of the impairments listed under the SSA's Listing of Impairments ("Listings"). (R. 17). Furthermore, based on Plaintiff's residual functional capacity ("RFC"), the ALJ concluded that Plaintiff retained the RFC to perform light work and permitted her to work as a hand bander, a cashier, or an "inspector/hand packer." (R. 20-26).

On October 23, 2019, Plaintiff appealed to the Appeals Council (R. 509), which denied the review of the ALJ's decision on September 9, 2020. (R. 4-10). This was the final act of the Commissioner.

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the decision of the Commissioner of Social Security is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

II.    **Background**

A.    *Plaintiff's Medical History*

Plaintiff, born in 1969, was 49 years old at the onset of her alleged disability. (R. 510). She has a high school education (R. 397), and she has no past relevant work. (R. 25). On September 25, 2018, Plaintiff received treatment from Barbara Polchinski Alamarri, L.C.S.W. (R. 687). Plaintiff's had multiple conditions noted in her medical history including depression, generalized anxiety disorder, OCD, PTSD, and social phobia. (R. 687). Plaintiff stated she also had psychological testing consistent with a diagnosis of an intellectual disability. (R. 688). Plaintiff was observed to tremble and become tearful when speaking about challenges she had

throughout her life. (R. 688). Plaintiff was "alert and oriented," and her speech was "logical, and

goal-directed." (R. 688). L.C.S.W. Alamarri diagnosed Plaintiff with depression and generalized

anxiety disorder. (R. 688). Two days after Alamarri's diagnosis, Plaintiff was seen by psychiatrist

Babatunde Asemota[1], M.D. (R. 685). Plaintiff's mood was "stable" and less anxious than in the

past. (R. 685). Dr. Asemota diagnosed Plaintiff with anxiety. (R. 686).

   B.   *Treatment with L.C.S.W. Alamarri*

On October 2, 2018, Plaintiff had a follow-up with L.C.S.W. Alamarri. (R. 678). She

described her anxiety as "up and down." (R. 679). Plaintiff became tearful at least two times

during the therapy session, but her speech was "logical and goal-directed." (R. 679). Plaintiff

described significant stress. (R. 679). On November 1, 2018, Plaintiff reported "symptoms of

anxiety with persistent worry, depression, compulsions to sweep her home four times a day,

difficulties engaging in social activities, and nervousness." (R. 900). Alamarri found Plaintiff

displayed jaw trembling and a fatigued appearance. (R. 901). Plaintiff was "alert and oriented,"

her speech was "logical and goal-directed," she was participatory in session, and she had

followed through with all referrals from her doctor. (R. 901). Plaintiff received continuous

treatment with Alamarri through December 14, 2018. (R. 890-891, 1029-1030).

On December 31, 2018, Plaintiff had a therapy session with Alamarri and was observed

to be crying "very emotionally." (R. 1025-1026). During therapy on January 17, 2019, Plaintiff

discussed "verbal abuse and abusive corporal punishment that she experienced when she was a

child" and her brother's death. (R. 1018-1019). She was "alert and oriented," and her speech

was "logical and goal-oriented."(R. 1019). On February 7, 2019, Plaintiff described continued

---

[1] Dr. Asemota is a board-certified psychiatrist.

struggles with anxiety. (R. 1011-1012). Plaintiff returned for a routine therapy session with Alamarri on March 12, 2019. (R. 1009-1010). Plaintiff stated that "she was feeling well, was taking her medication as prescribed, and enjoyed her birthday." (R. 1010). On mental status examination, Plaintiff was "alert and oriented," had logical and goal-directed speech, and was "smiling" and "doing well." (R. 1010). Plaintiff's symptoms of depression, anxiety, PTSD, and OCD were all reduced in frequency and intensity. (R. 1010).

On June 25, 2019, Plaintiff was observed "visibly shaking" when describing her daughter's fiancée's motorcycle accident and when describing a problem with her now ex-boyfriend. (R. 967-968). She verbalized her thoughts and feelings in sessions, and healthy coping techniques were discussed. (R. 968). She exercised at the gym, walked a lot, and planned to go to the library with her son. (R. 968). At a psychiatric visit on July 18, 2019, a mental status examination revealed a sad mood and restricted affect. (R. 1129-1130). This was due to the breakup with her boyfriend after he suggested "pimping her out." (R. 1129). On October 1, 2019, Plaintiff told her therapist that recent events were impacting her depression, anxiety, and PTSD symptoms. (R. 131-132). She returned for another therapy visit on October 16, 2019 and reported feeling well and managing life stressors. (R. 129-130).

C.  _Treatment with Dr. Asemota_

On March 28, 2019, Plaintiff received treatment from Dr. Babatunde Asemota. (R. 997). Plaintiff was "worrying a lot" but her mood was less depressed. (R. 997). Plaintiff had increased anxiety and felt tense even though her depression had improved. (R. 997). Dr. Asemota's mental status examination confirmed that Plaintiff had a restricted affect and an "alright" mood. (R. 997). At a therapy session on April 3, 2019, Plaintiff reported improvement and

4

feeling well. (R. 995-996). No significant changes were noted through May 6, 2019. (R. 989-990,

978-979). By May 16, 2019, Plaintiff told Dr. Asemota that she was again "worrying a lot" but

her mood remained stable. (R. 976). The mental status exam found Plaintiff's mood was "okay,"

but her affect was restricted. (R. 977). On May 28, 2019, Plaintiff returned for a routine therapy

visit. (R. 969-970). She stated that "she was feeling well, her mental status examination was

normal, and her symptoms were well controlled with medication and therapy."(R. 970).

Dr. Asemota found that Plaintiff had marked limitations in her ability to: (1) remember

locations and work-like procedures; (2) understand and remember detailed instructions; (3)

carry out detailed instructions; (4) maintain attention and concentration for extended periods;

(5) perform activities within a schedule and consistently be punctual; (6) sustain an ordinary

routine without supervision; (7) complete a workday without interruptions from psychological

symptoms; (8) perform at a consistent pace without rest periods of unreasonable length or

frequency; (9) interact appropriately with the public; and (10) travel to unfamiliar places or use

public transportation (R. 136). Dr. Asemota also found that Plaintiff had "moderate-to-marked"

limitations in her ability to: (1) understand and remember one-to-two-step instructions; (2)

carry out simple, one-to-two-step instructions; (3) work in coordination with or near others

without being distracted by them; (4) make simple work-related decisions; (5) accept

instructions and respond appropriately to criticism from supervisors; (6) respond appropriately

to workplace changes; and, (7) set realistic goals. (R. 136). Dr. Asemota also found Plaintiff had

"moderate" limitations in her capacity to (1) ask simple questions or request assistance; (2) get

along with co-workers or peers without distracting them; (3) be aware of hazards and take

appropriate precautions; and (4) make plans independently. (R. 136). Plaintiff would miss work, on average, more than three times a month due to her impairments or treatment. (R. 137).

### D. *Dr. Anitaris*

Dr. Melissa Antiaris evaluated Plaintiff at the behest of the Social Security Administration on December 3, 2018. (R. 919). Plaintiff reported symptoms of "disturbed sleep due to anxiety, depression most days, feelings of sadness, diminished self-esteem, loneliness, excessive worry, constant cleaning and checking, panic attacks 1-2 times a week, and difficulty with her memory and concentration." (R. 919-920). Dr. Antiaris diagnosed generalized anxiety disorder, unspecified depressive disorder, rule-out panic disorder, and rule-out OCD. (R. 922). Dr. Antiaris found Plaintiff was "moderately limited" in her ability to regulate her emotions, control her behavior, and maintain well-being but otherwise had no more than mild limitations in any areas of functioning. (R. 921-922). Dr. Antiaris found that the results of the examination appeared consistent with psychiatric concerns but in itself did not appear significant enough to interfere with Plaintiff's ability to function on a daily basis. (R. 922).

### E. *Dr. D'Ortona*

State agency psychological consultant, Dr. M. D'Ortona, PsyD. reviewed the record and provided an opinion on December 21, 2018. (R. 439). Dr. D'Ortona opined Plaintiff had mild limitations to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) and adapt or manage herself. (R. 440-446).

### F. *The ALJ's Decision*

The ALJ applied a five-step analysis and concluded that Plaintiff was not disabled under the SSA. (R. 15). The ALJ found that Plaintiff had the following severe impairments:

degenerative disc disease of the lumbar spine with scoliosis; degenerative disc disease of the thoracic spine; asthma; obesity; intellectual disability; PTSD; OCD; anxiety disorder; and depressive disorder were severe. (R. 16). The ALJ found that these impairments did not fall under any of the impairments listed under the SSA's Listings. (R. 17). Based on Plaintiff's medical history, the ALJ concluded that Plaintiff had the RFC to perform light work. (R. 20).

III.    **Analysis**

   A.   Applicable Law

   **1. Standard of Review**

A motion for judgment on the pleadings should be granted if the pleadings make it clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c). However, a court's review of the commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the commissioner and whether the correct legal standards were applied. 42 U.S.C.A. § 405(g). Substantial evidence is more than a mere scintilla but requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a reasonable factfinder would have to conclude otherwise." *Id*.

**2. Determination of Disability**

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation process, where the burden rests on the plaintiff for the first four steps and only after all four steps are satisfied does the burden then shift to the commissioner for the final step. 20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4). Second, an ALJ must find that the plaintiff's impairment is so severe that it limits her ability to perform basic work activities. *Id*. Third, an ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings, such that she may be presumed to be disabled. Absent that, an ALJ must then determine the claimant's RFC, or her ability to perform physical and mental work activities on a sustained basis. *Id*. Fourth, an ALJ then evaluates if the plaintiff's RFC precludes her from meeting the physical and mental demands of her prior employment. *Id*. If the plaintiff has satisfied all four of these steps, the burden then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. *Id.*

B.  Analysis of ALJ's Decision

Plaintiff rests her appeal upon three issues with the ALJ's decision. Plaintiff claims that

the ALJ failed to: (1) fully and fairly develop the record for the *pro se* claimant; (2) consider new

and material evidence provided to the Appeals Council; and, (3) properly evaluate Plaintiff's

subjective statements.

**1.  The ALJ Failed to Develop the Record Fully and Fairly for the *Pro se* Claimant.**

An ALJ has a special duty to protect the rights of a *pro se* claimant in developing the

medical record. *Lopez v. Sec'y of Dept. of HHS*, 728 F.2d 148, 149 (2d Cir. 1984). *See also*

*Bluvband v. Heckler*, 730 F. 2d 886, 892 (2d Cir. 1984); *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir.

1990). An ALJ does so by ensuring that all of the relevant facts are sufficiently developed and

considered, and by scrupulously and conscientiously probing into, inquiring of, and exploring all

relevant facts. *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009)

Plaintiff argues that the ALJ failed this duty by failing to consider all relevant facts, as

shown by the ALJ's lack of citation to any specific medical facts or even persuasive nonmedical

evidence in support of his finding on Plaintiff's mental RFC. (ECF 24 at 14) (Joint Stipulation,

hereinafter "Stip."). However, the ALJ did cite the medical evidence when deciding Plaintiff's

RFC. (R. 20-23). The ALJ cited an independent consultative examination which showed that

Plaintiff exhibited a "full range of motion in the cervical spine" and had "full flexion, extension,

lateral flexion bilaterally, and full rotary movement bilaterally in the lumbar spine, full range of

motion in her elbows, forearms, wrists, hips, knees, and ankles bilaterally, full motor strength,

and no neurological deficits." (R. 21). The ALJ also considered Plaintiff's treating history of

asthma, OCD, PTSD, anxiety disorder, and depressive disorder. (R. 21-22). The ALJ found that

Plaintiff had been stabilized with treatment. *Id.* The ALJ also considered the psychological opinions of Dr. Antiaris and M. D'Ortona. (R. 24). However, the ALJ did err by failing to provide specific reasons when he concluded that Dr. Antiaris and M. D'Ortona's opinions were partially persuasive. *Id.*

Plaintiff also argues that the ALJ made no attempts to obtain opinions from Plaintiff's treating physicians regarding her limitations and did not inform Plaintiff of the importance of doing so. (Stip. at 12). Although the ALJ informed Plaintiff of the right to representation, he did not inform Plaintiff of the importance to submit all treatment records. (R. 14). It is true that an ALJ is not obligated to supplement the record by acquiring a medical source statement from one of the treating physicians when there is a complete medical record. *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013); *see also Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018). However, an ALJ must "make every reasonable effort to obtain […] a report that sets forth the opinion of that treating physician as to the existence, the nature, and the severity of the claimed disability." *Peed v. Sullivan*, 778 F.Supp. 1241, 1246 (E.D.N.Y.1991). Furthermore, the ALJ had an obligation to inform the claimant of the lack of documentation from the treating physicians, and of her right to subpoena medical records and reports on her own. *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990).

Here, the ALJ obtained Plaintiff's medical records from Mount Vernon Neighborhood Health. (R. 678-889, 967-1030, 1129-1243). Even in the presence of an obvious gap in the record, the ALJ did not fulfill his duty to obtain a report that sets forth the opinion of the treating physicians, or to inform Plaintiff of the lack of documentation from her treating physicians and her right to subpoena the records on her own.

   **2. The ALJ Failed to Consider New and Material Evidence Provided to the Appeals
      Council.**

   An Appeals Council will review a case when it receives additional evidence that it is new,

material, relates to the period on or before the date of the hearing decision, and if there is a

reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 416.1470(a)(5). When the Appeals Council denied Plaintiff's request to review the

ALJ's decision, it stated that it considered new evidence, including the opinions from treating

psychiatrist Dr. Asemota, but found "this evidence does not show a reasonable probability that

it would change the outcome of the [ALJ's] decision." (R. 5). No further explanation was

provided for the *pro forma* denial by the Appeals Council. *Id.*

   Here, Dr. Asemota's opinion dated December 19, 2019, two months after the issuance

of the ALJ's decision, was new evidence. The new evidence is material and related to the

appropriate time period, since it addresses Plaintiff's RFC prior to the ALJ's decision. (R. 137).

Contrary to the Appeals Council's unexplained decision, the new evidence has a reasonable

probability of changing the outcome of the decision since Dr. Asemota, a treating physician,

found that Plaintiff had moderate to marked limitations. (R. 137).

   **3. The ALJ Properly Evaluated Plaintiff's Subjective Statements.**

   In evaluating subjective symptoms, a claimant must first demonstrate the existence of a

medically determinable impairment that could reasonably be expected to produce the

symptoms. 20 C.F.R. § 416.929(c)(2). After such an impairment has been identified, the

intensity and persistence of the claimant's symptoms are evaluated based on all available

evidence. *Id.*

Here, the ALJ properly evaluated Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms, and concluded after extensive analysis that they were inconsistent with the evidence in the record. (R. 20-25). For example, the ALJ considered Plaintiff's allegation that her psychological symptoms include "sleeplessness, depression/sadness, diminished self-esteem, loneliness, excessive worrying, constant cleaning, panic attacks, and difficulties with short-term memory and concentration." (R. 22, 919-20). However, the ALJ also considered that Plaintiff was able to follow instructions from healthcare providers and comply with treatment, and that the record contains no mention of distractibility, despite Plaintiff's asserted difficulties with memory and concentration. (R. 18). Moreover, the ALJ also considered that Plaintiff's psychological symptoms were stabilized with ongoing therapy and medication management. (R. 23). While Plaintiff argues that her occasional exacerbation in symptoms proves that her condition was in fact not stable, the ALJ properly considered that any such exacerbations followed traumatic life events such as the injury of a child or the anniversary of a death, and thus did not undermine Plaintiff's overall mental stability as relevant to her ability to function in a work setting. *See Swiantek*, 588 F. App'x at 83-84 (behaviors precipitated by situational factors, rather than longitudinal manifestations of psychological disorders, belied the presence of totally disabling functional limitations).

**IV.     Conclusion**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**,

the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the decision of

the Commissioner of Social Security is remanded for further proceedings pursuant to 42 U.S.C.

§ 405(g).

        **SO ORDERED.**

                                                    _s/  Ona T. Wang_
Dated: March 3, 2023                                        **Ona T. Wang**
       New York, New York                          United States Magistrate Judge